UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

—————

SHANE MICHAEL CALVEY,

        Petitioner,               Case No. 1:15-cv-976

v.                                 Honorable Robert J. Jonker

S.L. BURT,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner presently is incarcerated at the Muskegon Correctional Facility after pleading guilty to two counts of assault with intent to do great bodily harm, less than murder (AGBH), MICH. COMP. LAWS § 750.84, and a single count of unlawful imprisonment, MICH. COMP. LAWS § 750.349b. Petitioner was sentenced by the Chippewa County Circuit Court on December 22, 2010, as an habitual offender–third offense, MICH. COMP. LAWS § 769.11, to concurrent terms of eight to twenty years for the AGBH charges, and fourteen years, three months to thirty years for the unlawful imprisonment charge. In his amended *pro se* petition, Petitioner raises eight grounds for relief, as follows:

    I.     PETITIONER WAS DENIED DUE PROCESS BECAUSE THE PRESIDING JUDGE WAS BIAS[ED] OR PREJUDICE[D] AGAINST HIM.

    II.    THE PETITIONER'S PLEA WAS NOT KNOWING AND VOLUNTARY BECAUSE IT WAS BASED ON A MISUNDERSTANDING OF THE POTENTIAL SENTENCE.

III.    TRIAL COUNSEL WAS INEFFECTIVE FOR NOT RAISING THE ISSUE OF JUDICIAL BIAS, AND PROVIDING THE PETITIONER INACCURATE INFORMATION REGARDING POSSIBLE SENTENCING.

IV.    PETITIONER WAS DEPRIVED OF HIS SIXTH AMENDMENT COMPULSORY DUE PROCESS RIGHT BY [THE] PROSECUTING ATTORNEY'S INTIMIDATION OF THE COMPLAINING WITNESS [BY] IMPERMISSIBLY CHARGING HER FOR PERJURY  SO SHE WOULD REFUSE TO TESTIFY ON THE PETITIONER'S BEHALF.

V.    PETITIONER WAS DEPRIVED HIS FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS AS RESULT OF THE PROSECUTING ATTORNEY'S FAILURE TO DISCLOSE AN AGREEMENT WITH THE COMPLAINING WITNESS THAT SHE WOULD NOT BE PROSECUTED FOR PERJURY IF SHE TESTIFIED FOR THE STATE.

VI.    PETITIONER'S MINIMUM SENTENCE OF FOURTEEN YEARS THREE MONTHS FOR UNLAWFUL IMPRISONMENT IS UNCONSTITUTIONAL, CRUEL AND UNUSUAL, BECAUSE IT IS "SIGNIFICANTLY DISPROPORTIONATE" TO THE CRIME COMMITTED.

VII.    PETITIONER'S SENTENCE WAS BASED ON INACCURATE INFORMATION REGARDING HIS PRIOR OFFENSE RECORD, AND OFFENSE SCORING VARIABLES OF HIS SENTENCING GUIDELINES.

VIII.    THE PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR FAILING TO INVESTIGATE AND SUBMIT THE AFFIDAVIT OF PREVIOUS TRIAL ATTORNEY REGARDING THE CLAIM OF JUDICIAL BIAS, AND FOR FAILING TO RECOGNIZE AND RAISE THE SENTENCING, INTIMIDATION OF WITNESS, AND FAILURE TO DISCLOSE CONSTITUTIONAL ISSUES ON APPEAL.

(Pet. Br. i-ii, ECF No. 2, PageID.37-38.)[1]  Respondent has filed an answer to the petition (ECF No. 11) stating that the grounds should be denied.  Upon review and applying the AEDPA standards, I find that Petitioner's grounds are without merit.  Accordingly, I recommend that the petition be denied.

## Procedural History

### A.    Trial Court Proceedings

Petitioner, then roughly thirty-five years of age, suspected that his nineteen year old fiancée, Kayla Brumfield, was being unfaithful to him.  Instead of speaking with her about his concerns, Petitioner choked her until she passed out.  He then forced her into his car and drove her from their home in Chippewa County, Michigan, to a wooded area in Mackinac County where he again choked her until she was unconscious.  All the while Petitioner repeatedly hit, punched, kicked, spit on, verbally assaulted, and threatened to kill, his fiancée.  When the two returned to their home, Petitioner would not allow Kayla to leave the house because he wanted to conceal the extent of her injuries.  After several hours, when Petitioner was in another room, Kayla fled their home and ran to a local store.  There she called 911 and hid in the store's walk-in cooler until police officers arrived.  Petitioner was subsequently charged in two separate actions in both counties.  In Chippewa County he was charged with unlawful imprisonment, two counts of AGBH, torture, and domestic violence.  In Mackinac County he was charged with attempted murder, carrying a concealed weapon,

---

[1] Petitioner originally claimed an additional five grounds for relief.  (Pet. Br. ii, ECF No. 2, PageID.38.)  These additional grounds, however, were not fully pursued in the state courts.  Recognizing this defect, Petitioner filed a motion for stay and abeyance to further pursue these claims.  (ECF No. 3.)  On November 30, 2015, Chief Judge Jonker denied Petitioner's motion, noting that Petitioner had already filed his one allotted motion for relief from judgment in the state courts, and the state courts had denied Petitioner's second motion for relief from judgment.  (ECF No. 5.)  Thereafter Petitioner moved to amend his petition to remove grounds IX-XIII from his petition.  (ECF No. 8.)  This Court granted Petitioner's motion on June 10, 2016.  (ECF No. 15.)  Accordingly, the Court will address only the first eight grounds of Petitioner's habeas petition.

possession of a controlled substance, and AGBH. (ECF No 12-1, PageID.547; ECF No. 12-2, PageID.553.)

Given the separate actions in two counties, pretrial proceedings in this case were lengthy and complicated. The case became further entangled when, after obtaining recorded jail cell phone calls, the prosecution believed that Petitioner had instructed Kayla to lie and flee the area. Anticipating their key witness was about to abscond, a preliminary examination was held in the 92nd District Court in Mackinac County on August 10, 2010, during which time the prosecution for both Mackinac and Chippewa Counties questioned Ms. Brumfield. (8/10/10 Prelim. Hr'g, ECF No. 12-4.) On the stand, the prosecution's suspicions were realized when Kayla denied having argued with Petitioner, driving with him to Mackinac County, or being hit and choked by Petitioner. (8/10/10 Prelim. Hr'g 7-8, PageID.574-577.) Instead, she claimed she had been beaten up by a couple of girls. (8/10/10 Prelim. Hr'g 11, PageID.578.) It appears Ms. Brumfield was subsequently charged with perjury and taken into custody.

On September 30, 2010, a preliminary exam was conducted in Chippewa County. (9/30/10 Prelim Hr'g, ECF No. 12-7, PageID.643.) Believing Kayla had changed her mind about her testimony, and that her testimony would now be detrimental to his client, Petitioner's trial counsel moved to exclude her testimony on the grounds that she would be further opening herself up to a perjury charge and did not have counsel present. (9/30/10 Prelim Hr'g 6, PageID.648.) The trial court denied the motion, finding it would be sufficient to caution and instruct Kayla regarding her Fifth Amendment rights.

Kayla proceeded to testify that she had not been truthful at the previous hearing, and that in fact Petitioner did assault her and prevent her from leaving their residence. She stated that

at 7:00 on the morning of July 28, 2010, Petitioner pushed her down the stairs, choked her until she was unconscious, and forced her into his car. They got on the expressway, heading towards Mackinac County. (9/30/10 Prelim Hr'g 27-32, PageID.669-674.)

During the drive, Petitioner hit Kayla in the arm and threatened to kill her. He wanted to know the details of the suspected affair between Kayla and her coworker. Petitioner also grabbed her hair and tried to smash her head into the dashboard. On the way to Mackinac County, Petitioner stopped at a gas station, but Kayla did not leave the car as she felt he was watching her. (9/30/10 Prelim Hr'g 33-35, PageID.675-677.) Kayla then testified Petitioner took her to a wooded area, and told her to get out. Petitioner forced her to take a stick and dig into the dirt to demonstrate to her how soft the ground was and how easy it would be to bury her. (9/30/10 Prelim Hr'g 37, PageID.679.)

Petitioner then told Kayla to get back in the car, and drove her to another secluded area where there was a chained fence with a no-trespassing sign. Petitioner unhooked the fence and backed the car in. He told Kayla to get out of the car, and asked whether he should kill her then or bury her alive. (9/30/10 Prelim Hr'g 38, PageID.680.) When Kayla said to just kill her then, Petitioner choked her until she was unconscious. When Kayla woke up, she was lying on the ground. Petitioner was standing at her feet with a socket wrench in his hand. (*Id.*) He then forced Kayla to demonstrate how she had sex with her coworker. When she got on all fours, Petitioner kicked her. She rolled onto her back, and Petitioner tried to drop a rock onto her face. (9/30/10 Prelim Hr'g 40, PageID.682.) She kicked him, and Petitioner asked her why he should let her go. They then got back into the car. (9/30/10 Prelim Hr'g 43, PageID.685.)

They got back on the expressway, and Petitioner continued to ask Kayla why he should not kill her, all the while continuing to hit her in the arm and face. (9/30/10 Prelim Hr'g 45-46, PageID.687-688.) Then Petitioner stopped at a gas station and got her a fresh shirt and some water to wipe her face. (9/30/10 Prelim Hr'g 48, PageID.690.) They drove back to the house, and Petitioner told Kayla that she could not say anything, and could not leave the bedroom, unless he was with her. (9/30/10 Prelim Hr'g 49, PageID.691.) He instructed Kayla to tell their roommates that he was not holding her captive. (9/30/10 Prelim Hr'g 52, PageID.695.) After a time, when she saw that she was alone, Kayla ran out the door and went to a local market where she hid and called 911. (9/30/10 Prelim Hr'g 54, PageID.696.)

After receiving this testimony, the district court bound Petitioner over for trial in circuit court on the charges. Before the trial date, however, the parties reached a plea agreement. Under the agreement, Petitioner pleaded guilty on November 9, 2010, in the Mackinac Circuit Court to a count of AGBH and further admitted to being a habitual offender, his third offense. As recited by the prosecution, the agreement also covered the prosecution in Chippewa County. The prosecution noted that pursuant to the agreement, Petitioner would also be pleading guilty to the AGBH and unlawful imprisonment charges in Chippewa County. (11/9/10 Plea Tr. 3-4, ECF No. 12-9, PageID.794-795.) In exchange for his plea, the prosecutors in Mackinac and Chippewa Counties would dismiss the other changes. (11/9/10 Plea Tr. 4-5, PageID.795-796.) Petitioner stated that he fully understood the plea agreement and the rights he was waiving by pleading guilty, and that he was pleading guilty of his own free will. (11/9/10 Plea Tr. 6-9, PageID.797-800.) For the factual basis, Petitioner admitted that on July 28th, 2010, he was in Mackinac County with Kayla Brumfield. They had previously been arguing, and Petitioner admitted that at some point he had

assaulted Kayla with an intent to harm her by placing his hands around her neck and causing her to become unconscious. Petitioner also admitted to two prior felony convictions in 2001 and 2003. (11/9/10 Plea Tr. 10-11, PageID.801-802.) Petitioner's guilty plea was accepted.

Thereafter, a plea hearing was held on November 18, 2010, in Chippewa County. The terms of the plea agreement as recited in the Mackinac County action were read into the record. (11/18/10 Plea Tr. 3-5, ECF No. 12-10, PageID.809-811.) Petitioner again testified that he fully understood the plea agreement and the rights he was waiving by pleading guilty, and that he was pleading guilty of his own free will. (11/18/10 Plea Tr. 5-10, PageID.811-816.) For the factual basis, Petitioner admitted that on July 28, 2010, he was at his residence in Chippewa County with Kayla Brumfield. They argued, and it escalated to the point where he assaulted her. He admitted that while they were at his residence, he intentionally choked Ms. Brumfield to the point of unconsciousness. He further admitted to physically putting Ms. Brumfield into his car and driving her to Mackinac County where he further assaulted her and choked her until she became unconscious. When they returned, he forced Ms. Brumfield to remain in their residence in order to conceal the injuries that she had sustained that day. (11/18/10 Plea Tr. 11-15, PageID.817-821.) Petitioner also admitted to two prior felony convictions. The trial court accepted Petitioner's guilty plea.

After both plea hearings, the parties stipulated that the Chippewa County Circuit Court Judge would sentence Petitioner for both the Mackinac County and Chippewea County actions. (ECF No. 12-11, PageID.827.) Accordingly, the sentencing hearing on both matters was held on December 22, 2010, before Chippewa County Circuit Court Judge Ulrich. At the sentencing hearing, Kayla made the following statement:

Judge, I would like to tell you about the day Shane Calvey tried to kill me. He beat on me all day long for seven hours straight. He choked me out until I passed out twice, once in the Sault and once in Mackinac County. He also had me on the ground doggie style kicking me in the butt calling me dirty things. He also spit on me in the car telling me, "How can you live with yourself knowing that you're a whore.' He tried to bang my head off the dashboard.

When we got back to the house, he made me tell the people that we were staying with how I was a whore and I slept with my coworker. He also made me tell them that I wanted to be at the house and that he was not holding me against my will.

When I finally escaped the house, I ran to Palmer's Market, and they hid me in the walk-in cooler because the people in the house came looking for me. I felt scared, hurt, and upset. I thought I was going to die. It still affects me today. I have nightmares, sometimes have panic attacks.

I would like the Defendant, Shane Calvey, to get counseling, substance abuse, and the maximum time in prison because he has hurt others in the past and is becoming more violent. My request for him is to get the maximum sentence in prison.

(Sentencing Tr. 18-19, ECF No. 12-12, PageID.846-847.) Kayla also showed the judge pictures of her injuries. (*Id.*) Beginning with the charges in Chippewa County, the trial court judge stated he considered going outside the guidelines, but instead sentenced Petitioner to the maximum guideline sentence of fourteen years, three months to thirty years for the unlawful imprisonment charge. On the AGBH charge, Petitioner was sentenced to eight to twenty years' imprisonment. (Sentencing Tr. 19-21, PageID.847–849.) Moving to the conviction in Mackinac County, the trial court sentenced Petitioner to a concurrent term of eight to twenty years' imprisonment. (Sentencing Tr. 33-34, PageID.861-862.)

### B.    Direct Appeal

Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals. His brief, which was filed by counsel on December 20, 2011, raised the first three issues presented in this application for habeas corpus relief. (*See* Def. Appellant's Br. On Appeal, ECF No.

12-19, PageID.1202.)  The Michigan Court of Appeals denied Petitioner's application for leave to appeal for lack of merit in the grounds presented.  (*See* 4/17/12 Mich. Ct. App. Order, ECF No. 12-19.)

Petitioner subsequently filed an application for leave to appeal to the Michigan Supreme Court.  Petitioner raised the same three claims raised before and rejected by the Michigan Court of Appeals.  By order entered September 4, 2012, the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed.  (*See* 9/4/12 Mich. Order, ECF No. 12-20.)

### C.    Post-conviction relief

Petitioner returned to the Chippewa County Circuit Court by filing a motion for relief from judgment under MICH. CT. R. 6.500 *et seq*., on September 30, 2013.  (*See* 9/30/13 Mot. for Relief from J., ECF No. 12-13.)  In his motion, he raised the same five issues as grounds IV through VIII of his habeas petition.  (*See* 9/30/13 Mot. For Relief From J., 2-3, PageID.871-872.)  The trial court rejected Petitioner's issues for lack of merit, finding "[n]one of the grounds asserted reveals any defect in the proceedings such that it renders the plea involuntary and that it would be manifestly unjust to allow the conviction to stand."  (2/25/14 Op. & Order, ECF No. 12-15, PageID.1061.)

Petitioner filed applications for leave to appeal the denial of his motion in the Michigan Court of Appeals and the Michigan Supreme Court.  Those courts denied leave by orders dated November 7, 2014, (ECF No. 12-21) and September 9, 2015 (ECF No.12-22), respectively, finding Petitioner had failed to meet his burden of establishing entitlement to relief under MICH. CT. R. 6.508(D).  On December 30, 2014, while his first motion for relief from judgment was still

pending before the Michigan Supreme Court, Petitioner filed a second motion for relief from judgment, asserting the following additional claims:

I. THE [PETITIONER'S] PLEA WAS UNKNOWING, INVOLUNTARY, AND UNINTELLIGENT DUE TO EGREGIOUS MISCONDUCT BY BOTH PROSECUTORS AND DET[ECTIVE] LACROSS.

II. THE POLICE AND PROSECUTORIAL THREATS AND COERCION OF THE COMPLAINANT VIOLATED DUE PROCESS AND / OR RENDERED INVOLUNTARY THE [PETITIONER'S] PLEA.

III. THE PROSECUTION TEAM INSTRUCTED AND THEN ELICITED A WITNESS TO TESTIFY FALSELY AT THE SECOND PRELIMINARY EXAMINATION.

IV. ELIZABETH CHAMBERS STATED FALSELY TO THE COURT THAT THERE WAS NO DEAL, WHICH WAS FALSE AND A FRAUD ON THE COURT.

V. BOTH TRIAL AND APPELLATE COUNSEL WERE INEFFECTIVE FOR FAILING TO AVER THE PRIOR CLAIMS WHEN BOTH ATTORNEY'S KNEW OF THE CLAIMS AND HAD THE OPPORTUNITY TO PRESENT THEM.

(*See* 12/30/14 Mot. for Relief from J., 2-3, ECF No. 12-16, PageID.1064-1065.) On January 22, 2015, the trial court deferred ruling on Petitioner's second motion until the Michigan Supreme Court ruled on Petitioner's first motion for relief from judgment. (*See* 1/22/15 Order, ECF No. 12-17, PageID.1197.) After the Michigan Supreme denied Petitioner's leave to appeal the court of appeals' ruling on his first motion, the trial court denied Petitioner's second motion for relief from judgment, concluding that Petitioner had not demonstrated he fell into one of the two circumstances contemplated for allowing a second motion for relief from judgment under MICH. CT. R. 6.502(G)(1). (*See* 10/29/15 Op. & Order, ECF No. 12-18, PageID.1198.) Petitioner sought leave to appeal this order in the Michigan Court of Appeals. By order dated February 10, 2016, the Michigan Court of

Appeals dismissed Plaintiff's application, citing the same court rule referenced by the trial court. (*See* 2/10/16 Mich. Ct. App. Order, ECF No. 12-23, PageID.1598.)

## **Standard of Review**

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court

announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington*, 562 U.S. at 99; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference). The

presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. at 1096. Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review. *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Harrington*, 562 U.S. at 99-100 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

## Discussion

I.    Judicial Bias

Petitioner alleges that he was denied his constitutional right to due process because the presiding judge at his sentencing hearing was biased and subject to disqualification. Petitioner contends this is so for three primary reasons: the presiding judge had previously disqualified himself in a case where Petitioner had been the defendant, the judge made several biased statements against

him at the sentencing hearing and imposed the maximum guideline sentence, and the judge refused to allow two individuals to make statements in support of Petitioner at his sentencing. (Pet. Br. 23-27, ECF No. 2, PageID.72-76.) Respondent argues Petitioner expressly agreed that the presiding judge would sentence him in both matters, and has waived any claim of judicial bias. In any event, Respondent argues, Petitioner has not shown bias. (Resp't Br. 22-24, PageID.494-496.)

A claim of judicial bias "is not susceptible to forfeiture – while the record certainly suggests that [the petitioner] *forfeited* this claim by failing to object to [the judge], the record is devoid of any evidence that [the petitioner] pro-actively *waived* this claim." *Railey v. Webb*, 540 F.3d 393, 399 (6th Cir. 2008) (emphasis in original) (citing *United States v. Olano*, 507 U.S. 725, 733 (1993) ("Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right."). As a result, if the court finds the existence of judicial bias, the court cannot disregard the error on the theory that the defendant failed to preserve the issue or suffered no prejudice from it. *Railey*, 540 F.3d at 399.

"Due process requires a fair trial before a judge without actual bias against the defendant or an interest in the outcome of his particular case." *United States v. Armstrong*, 517 U.S. 456, 468 (1996); *see also In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process. Fairness requires an absence of *actual* bias in the trial of cases.") (emphasis added)). However, because of the difficulty in determining "whether a judge harbors an actual, subjective bias," the courts look to "whether, as an objective matter, the average judge in [that judge's] position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (internal quotations

omitted); *see also Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 883 (2009). The Supreme Court has recognized constitutionally impermissible, objective indicia of bias in the following types of cases: (1) those cases in which the judge "has a direct, personal, substantial pecuniary interest in reaching a [particular] conclusion," *Tumey v. Ohio*, 273 U.S. 510, 523 (1997) (subsequently expanded to include even indirect pecuniary interest, *see Railey* 540 F.3d at 399-400); (2) certain contempt cases, such as those in which the "judge becomes personally embroiled with the contemnor," *Murchison*, 349 U.S. at 141 (subsequently clarified to involve cases in which the judge suffers a severe personal insult or attack from the contemnor); and (3) cases in which a judge had prior involvement in the case as a prosecutor, *Williams*, 136 S. Ct. at 1905 (citing *Withrow v. Larkin*, 421 U.S. 35, 53 (1975)). The courts indulge "a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *Coley v. Bagley*, 706 F.3d 741, 751 (6th Cir. 2013) (citing, *inter alia*, *Withrow*, 421 U.S. at 47). "The presumption of impartiality stems not merely from the judicial-bias caselaw, [] but from the more generally applicable presumption that judges know the law and apply it in making their decisions, *see Lambrix v. Singletary*, 520 U.S. 518, 532 n.4 (1997), and the even more generally applicable presumption of regularity, *see Parke v. Raley*, 506 U.S. 20, 30–31." *Coley*, 706 F.3d at 751.

> The Court has also acknowledged four types of cases that, although they present prudent grounds for disqualification as a matter of common sense, ethics, or "legislative discretion," generally do not rise to a constitutional level-"matters of [1] kinship, [2] personal bias, [3] state policy, [and][4] remoteness of interest." *Tumey*, 273 U.S. 523; *accord Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 820, 106 S. Ct. 1580, 89 L. Ed. 2d 823 (1986). But, in the 81 years since *Tumey*, the Court has yet to expound upon this general statement regarding the presumptive constitutional indifference to these types of issues.

*Railey*, 540 F.3d at 399-400.

Petitioner has not demonstrated constitutional bias–either actual bias, the likelihood of bias, or the appearance of bias. Petitioner asserts that because the presiding judge disqualified himself in a prior proceeding in which Petitioner was a defendant, he was required to disqualify himself in this proceeding as well. But as Petitioner admits, in the prior proceeding–which occurred over ten years prior to the instant matter–the presiding judge had a personal relationship with the victim and her family, a consideration that is not present here. Moreover, the most that Plaintiff could demonstrate from that prior proceeding would be a personal bias that does not rise to a constitutional level. Nor does Petitioner demonstrate constitutional bias from the comments and sentence imposed by the judge. As the Supreme Court noted in *Liteky v. United States*, 510 U.S. 540 at 551 (1994), "opinions formed by the judge on the basis of facts introduced or events occurring in the course of current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." That is all that is present here, and there is nothing to show from the judge's comments that the presiding judge treated Petitioner unfairly at sentencing. The statements made by the presiding judge do not demonstrate bias. Rather they were permissible opinions and conclusions based on the Petitioner's admissions of guilt and presentence report. Based on these statements, the presiding judge found that a maximum guideline sentence was warranted. Petitioner has not shown constitutional error.

As for the sentencing court's refusal to allow two individuals to offer statements in support of Petitioner during his allocution, Petitioner admits that it "technically may not be a violation" but maintains it is highly irregular. (Pet. Br. 25, PageID.74.) The Court disagrees. There is no constitutional right to allocution under the United States Constitution. *Pasquarille v. United*

*States*, 130 F.3d 1220, 1223 (6th Cir. 1997) (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)).

Michigan Court Rules require only that a sentencing court "give the defendant, the defendant's lawyer, the prosecutor, and the victim an opportunity to advise the court of any circumstances they believe the court should consider in imposing sentence." M.C.R. 6.425(E)(1)(c). Here, the sentencing court addressed Petitioner and gave him an opportunity to address the court. (Sentencing Tr. 13-14, PageID.841-842.) Petitioner did so. (Sentencing Tr. 15-17, PageID.843-845.) The court then asked if Petitioner had any other parties on his behalf. Petitioner identified two individuals, but the court decided not to let them speak. (Sentencing Tr. 17, PageID.845.) While the judge did not give reasons for this decision, nothing from this fact indicates that the judge treated Petitioner unfairly. Rather it was a permissible action inherent in the court's authority over the courtroom.

For all the above reasons, this ground for habeas relief is rejected.

## II.     Knowing and Voluntary Guilty Plea

Petitioner secondly argues his plea was not knowing and voluntary because his counsel promised him he would be eligible for alternatives to incarceration, namely boot camp, if he pleaded guilty. (Pet. Br. 28, PageID.77.) The record fails to support Petitioner's contention.

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt. While courts may consider whether a factual basis for a guilty plea exists in their assessments of its validity, it has generally been held that the Constitution

does not require that they ensure such a basis exists. *See Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993) ("'Strong evidence of guilt' may suffice to sustain a conviction on an *Alford* plea, and may be essential under [FED. R. CRIM. P.] 11, but it is not necessary to comply with the Constitution.") (quoting *Alford*, 400 U.S. at 31); *see also Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000); *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983); *Thundershield v. Solem*, 565 F.2d 1018 (8th Cir. 1977); *Edwards v. Garrison*, 529 F.2d 1374, 1376 (4th Cir. 1975); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971).

In order to find constitutionally valid guilty plea, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state- induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett v. Henderson*, 411 U.S. 258, 267-68 (1973);

*Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57.

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.3d at 326). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

The terms of the plea bargains in both Mackinac and Chippewa counties were discussed on the record. (11/9/10 Plea Tr. 3-6, PageID.794–797; 11/18/10 Plea Tr. 3-5, PageID.809–811.) At both plea hearings Petitioner testified that he understood the charges against him, as well as the possible penalties that could be imposed if convicted. (11/9/10 Plea Tr. 6-7,

PageID.797-798; 11/18/10 Plea Tr. 5-7, PageID.811-814.) In Mackinac County, Petitioner executed an Advice of Rights form detailing the various rights he would be surrendering if he pleaded guilty. (11/9/10 Plea Tr. 7-8, PageID.798-799.) Petitioner testified that he understood that by pleading guilty he would be surrendering the rights described in the Advice of Rights form. (*Id.*) Petitioner also testified that he understood that if he pleaded guilty he would be surrendering any claim that his guilty plea "was made as a result of any threat, promise, or inducement not told to the Court here today" as well as any claim that his plea "was not freely or voluntarily given." (11/9/10 Plea Tr. 8, PageID.799.) At the Chippewa County plea, Petitioner testified he understood he was giving up several rights including, among others, the right to be tried by a jury and the right to be presumed innocent until proven guilty. (11/18/10 Plea Tr. 7-9, PageID.813-815.) He further testified he understood he would be "giving up any claim that the plea was the result of promises or threats that [were] not disclosed to [the judge] at [the] plea proceeding, or that it was not of [his] own choice to enter the plea." (11/18/10 Plea Tr. 9, PageID.815.) Considering the totality of the circumstances, any claim that Petitioner's guilty plea was not offered voluntarily, knowingly, and intelligently is simply not persuasive. Petitioner's bare assertions contained in his affidavit fail to overcome the heavy burden necessary to overturn the state findings.

### III.    Ineffective Assistance of Trial Counsel

In his third ground for habeas relief, Petitioner contends that his trial counsel rendered ineffective assistance for failing to object and preserve the record at sentencing regarding the issue of judicial bias, and for giving incorrect assurances to Petitioner that he would be eligible for boot camp. (Pet. Br. 29-32, PageID.78-81.) The Court is not persuaded.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th

Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58. Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

With respect to Petitioner's claim that his counsel was ineffective for failing to move for the disqualification of the sentencing court judge, as previously discussed, no basis existed for disqualifying the judge. Any motion to disqualify, therefore, would have been futile. Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004).

Petitioner's claim that his attorney promised him that his guilty plea would result in a lesser sentence (boot camp) than was actually imposed fares no better. This claim is flatly contradicted by Petitioner's testimony at his plea hearings. As discussed above, at both hearings the terms of the plea agreement were placed on the record. Petitioner explicitly testified twice under oath that his decision to plead guilty was based solely on the terms of the plea agreement and was

not based on any promises or statements that were not presented on the record during the plea proceedings.

Moreover, Petitioner cannot establish that even had his attorney not made any such alleged assurances, that he would have declined to accept the plea bargain and would have instead proceeded to trial. By pleading guilty Petitioner avoided being tried of a number charges, some of which carry a possible penalty of imprisonment for life or a lesser term of years, (*see, e.g.*, MICH. COMP. LAWS. § 750.85) as well as being convicted as a fourth offense felony offender. (PageID.788, MICH. COMP. LAWS § 769.12). Petitioner faced, therefore, the very real possibility that if he went to trial and was convicted of all the charges, he would receive an even lengthier prison term up to life. Here, while fourteen years three months to thirty years is a lengthy sentence, given Petitioner's relatively young age, Petitioner realized a very real benefit from his plea bargain and Petitioner has failed to demonstrate that absent these alleged assurances he would have instead gone to trial and risked the possibility of serving an even longer sentence.

In sum, Petitioner cannot establish deficient performance from the failure of counsel to object to the presiding judge at sentencing. He also cannot demonstrate that his attorney promised him that if he pleaded guilty he would receive a lesser sentence than was actually imposed. This ground for habeas relief accordingly fails.

IV & V.     Prosecutorial Misconduct

In his fourth and fifth grounds for habeas relief, Petitioner contends that his right to due process was violated because the prosecution engaged in witness intimidation by arresting his fiancée and charging her with perjury after the first preliminary hearing in Mackinac County. He further alleges the prosecutors committed witness intimidation by visiting his fiancée numerous

times while she was in jail, purportedly to entice her to change her testimony. Finally, he alleges the prosecutors violated the Supreme Court's holding in *Brady v. Maryland*, 373 U.S. 83 (1963) by refusing to disclose an alleged agreement between the prosecution and his fiancée under which Kayla would testify against Petitioner in exchange for the dismissal of the perjury charge. (Pet. Br. 32-41, PageID.81-90.)

Petitioner has waived these claims through his guilty plea. This is so because claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by that plea. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett*, 411 U.S. at 267. As the United States Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267. Consequently, a knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel that does not relate to the voluntariness of the plea. *See United States v. Stiger*, 20 F. App'x 307, 308-09 (6th Cir. 2001). For this reason, Petitioner cannot succeed on his witness intimidation claim.

As to his claim regarding an alleged agreement between his fiancée and the prosecution, the Sixth Circuit has held that a defendant may still argue that his plea was invalid because it was made in the absence of *Brady* material. *See Campbell v. Marshall*, 769 F.2d 314, 321 (6th Cir. 1985). However, other courts have held that the failure to disclose exculpatory information prior to the taking of a plea does not render the plea involuntary or constitute a *Brady* violation. This

reasoning was explained by the Fifth Circuit: "Because a *Brady* violation is defined in terms of the potential effects of undisclosed information on a judge's or jury's assessment of guilt, it follows that the failure of a prosecutor to disclose exculpatory information to an individual waiving his right to a trial is not a constitutional violation." *Matthew*, 201 F.3d at 361–62.

The continued validity of *Campbell* is called into question by the Supreme Court's more recent decision in *United States v. Ruiz*, 536 U.S. 622 (2002). In that case, the Court held that a plea is not rendered invalid by the prosecutor's failure to disclose exculpatory impeachment information prior to the entry of the plea. *Id.* at 628–33. While the Court expressly declined to consider whether this rule also applied to exculpatory substantive evidence, the Court's reasoning focused on the *Brady* rule's connection to the truth-finding function at trial, suggesting that the holding in *Ruiz* extends to exculpatory substantive evidence as well. Indeed, at some points, the Court did not distinguish between the two types of exculpatory evidence, going so far as to note that "due process considerations, the very same considerations that led this Court to find trial related rights to exculpatory and impeachment information in *Brady* and *Giglio*, argue against the existence of the 'right'" to pre-plea disclosure. *Ruiz*, 536 U.S. at 631.

Even if the Sixth Circuit cases recognizing such a right survive *Ruiz*, those cases alone cannot provide a right to habeas relief. Under § 2254, habeas relief is available only if the state court violated clearly established federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1). In light of the reasoning of *Ruiz*, the Court's repeated description of *Brady* as grounded in the right to a fair trial, the lack of any Supreme Court precedent requiring *Brady* material to be disclosed prior to the entry of a guilty plea, and the split among the courts of appeals

on this issue, it cannot be said that the right Petitioner seeks to invoke here constitutes clearly established law under § 2254(d)(1).

Finally, Petitioner's ground regarding the purported *Brady* material fails for another reason: Petitioner has not identified any alleged agreement between the prosecution and his fiancée. Petitioner asks the Court to infer one based on his assertion that he was later told (in a recorded conversation not in the record) by his fiancée that there was such an agreement, and based on the fact that his fiancée's perjury charge was dismissed the day he was sentenced. But weighing against this assertion is the prosecutor's recitation to the judge, on the record, that Kayla was not offered any type of immunity, (9/30/10 Prelim Hr'g 11, PageID.653), as well as Kayla's statement, under oath, that she had not been promised anything in exchange for her testimony. (9/30/10 Prelim Hr'g 99, PageID.741.) On this record, the Court cannot infer such an agreement.

Accordingly, the Court should conclude that Petitioner is not entitled to habeas relief on these grounds.

VI & VII.    Sentencing and Eighth Amendment

Petitioner next contends that the sentencing courts improperly scored several of his Prior Record or Offense Variables, resulting in a higher sentencing range. Petitioner asserts that the scoring violated state law and deprived him of due process because his sentence was based on inaccurate information. (Pet. Br. 41-56, PageID.90-105.)

Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir.

2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cook v. Stegall*, 56 F.Supp.2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). As a consequence, errors in the scoring of the guidelines under state law do not warrant habeas relief. As regards Petitioner's contention that the sentencing court violated his due process rights in making its sentencing determination, the Court disagrees.

There is no constitutional right to individualized sentencing in non-capital cases. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978) (in a case holding that mitigating factors must be fully considered in death penalty cases, the Court "recognize[d] that, in noncapital cases, the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes"). However, a sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Koras v. Robinson*, 123 F. App'x 207, 213 (6th Cir. 2005) (quoting *Roberts v. United States*, 445 U.S. 552, 556 (1980)); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Koras*, 123 F. App'x at 213 (quoting *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988)). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner's sentence clearly is not so disproportionate to the crime as to be arbitrary or shocking. *Doyle v. Scutt*, 347 F.Supp.2d 474, 485 (E.D. Mich. 2004). Further, the trial court's factual findings under the sentencing variables are entitled to a presumption of correctness in this Court. *See* 28 U.S.C. § 2254(e). Although Petitioner states that the information upon which the court relied was "inaccurate," he wholly fails to allege or demonstrate that the information was either materially false or based on false information. *Tucker*, 404 U.S. at 447. Instead, Petitioner glosses over what are really state law application arguments by presenting them as alleged false statements. For example, Petitioner claims the number of prior convictions is false, and as such the sentencing judge improperly scored twenty points for PRV 2, for being a defendant with three prior low severity convictions, MICH. COMP. LAWS § 777.52(1)(b). But this is based on an argument that one of his prior low severity convictions was discharged under the Holmes Youthful Trainee Act. Even accepting Petitioner's unsupported assertion as true, Petitioner raises solely a state law claim, which is not cognizable on habeas review, and thus fails to merit relief.

Petitioner further contends that the sentencing court improperly scored OVs 1, 2, 3, 4, 7, 8, 10, 12, and 13. Again, Petitioner does not identify any facts found by the court at sentencing that were either materially false or based on false information, but rather asserts that the trial court erred in applying the variables. Such claims clearly fall far short of the sort of egregious circumstances implicating due process. He therefore fails to demonstrate that his sentence violated due process. *Tucker*, 404 U.S. at 447; *United States v. Lanning*, 633 F.3d 469, 477 (6th Cir. 2011) (rejecting due process claim where the petitioner failed to point to specific inaccurate information relied upon by the court).

Turning to Petitioner's Eighth Amendment argument, this ground is also without merit. The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Further, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law as a habitual offender, *see* MICH. COMP. LAWS § 769.11. Petitioner's sentence therefore does not present the extraordinary case that runs afoul of the Eighth Amendment's ban of cruel and unusual punishment.

For all the above reasons, therefore, these grounds for relief are denied.

VIII.   Ineffective Assistance of Appellate Counsel

Finally, Petitioner argues that his appellate counsel was ineffective for failing to investigate the issue of judicial bias as well as failing to raise the issues Petitioner puts forth in

grounds IV through VIII of his habeas petition.  The two-prong Strickland test applies to claims of ineffectiveness brought against both trial and appellate counsel. *See Strickland*, 466 U.S. at 687–696 (examining conduct of trial counsel); *Smith v. Murray*, 477 U.S. 527, 535–536 (1986) (applying *Strickland* to claim of attorney error on appeal).

### A.    Judicial Bias

Petitioner's appellate counsel raised the issue of judicial bias as the first issue in his brief to the Michigan Court of Appeals.  (*See* Def. Appellant's Br. On Appeal, ECF No. 12-19, PageID.1210.)  As noted above, the presiding judge at Petitioner's sentencing had previously disqualified himself in a case where Petitioner was the defendant.  Petitioner claims his appellate counsel rendered ineffective assistance because he failed to contact the attorney who represented Petitioner in that earlier proceeding.  Petitioner contends that this attorney could have clarified an apparent confusion on the exact identity of the judicial officer who was disqualified in the prior proceeding and also substantiate his claims regarding judicial bias.  Petitioner relies on a signed affidavit from his prior counsel in which the attorney states that the order naming Judge Lambros as the disqualified judge was inadvertent error, and that the attorney was "of the clear and unequivocal opinion that Judge Ulrich's bias would carry over into any case involving Appellant Shane Calvey and Judge Ulrich should have been disqualified from any case involving Appellant." (11/29/12 Aff., ECF No.2-1, PageID.328-329.)

It is well established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Strickland*, 466 U.S. at 691. The duty to investigate derives from counsel's basic function, which is "'to make the adversarial testing process work in the particular case.'" *Kimmelman v. Morrison*, 477 U.S. 365, 384

(1986) (quoting *Strickland,* 466 U.S. at 690). This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); accord *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004). A purportedly strategic decision is not objectively reasonable "when the attorney has failed to investigate his options and make a reasonable choice between them." *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir.1991) (cited in *Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000)).

Courts have not hesitated to find ineffective assistance in violation of the Sixth Amendment when counsel fails to conduct a reasonable investigation into one or more aspects of the case and when that failure prejudices his or her client. For example, in *Wiggins v. Smith*, 539 U.S. 510, 524-29 (2003), the Supreme Court held that the petitioner was entitled to a writ of habeas corpus because his counsel had failed to conduct a reasonable investigation into potentially mitigating evidence with respect to sentencing. *Id.* According to the Court, "counsel chose to abandon their investigation at an unreasonable juncture, making a fully informed decision with respect to sentence strategy impossible." *Id.* at 527-28. Consistent with *Wiggins*, the Sixth Circuit has held, in a variety of situations, that counsel's failure to investigate constituted ineffective assistance in violation of the Sixth Amendment. *See, e.g., Towns*, 395 F.3d at 258-59. (holding that defense counsel's failure to investigate potentially important witness in robbery and felony murder trial was unreasonable, and thus constituted ineffective assistance, in violation of Sixth Amendment);

*Combs*, 205 F.3d at 287-88 (holding that defense counsel was constitutionally ineffective for failing to investigate adequately his own expert witness, who testified that, despite the defendant's intoxication at the time of the crime, the defendant nevertheless was capable of forming the requisite intent to commit the crimes); *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992) (holding that counsel was constitutionally ineffective for failing to conduct an investigation into certain physical evidence that would have undermined the prosecution's theory that the victim was shot at a distance); *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987) (holding that counsel's failure "to investigate a known and potentially important alibi witness" constituted ineffective assistance because "[c]ounsel did not make any attempt to investigate this known lead, nor did he even make a reasoned professional judgment that for some reason investigation was not necessary"); *see also Clinkscale*, 375 F.3d at 443 (collecting cases in which counsel's failure to investigate a potentially important witness constituted ineffective assistance).

The identity of the judicial officer was squarely addressed by Petitioner's appellate counsel in Petitioner's appellate brief:

> The case against Calvey from 2000 is of particular significance to the present issue of bias because Judge Ulrich was recused from hearing it apparently due to his relationship to the Tetzlaff family. Judge Ulrich was initially assigned the case but it was transferred from Judge Ulrich to a Judge Scott Pavlich–who is from the 53rd Circuit Court in Cheboygan County–based on judicial disqualification. (Exhibit D, SCAO Assignment Forms). Judge Nicholas Lambros, Chief Judge of the 50th Circuit Court signed the Order of Disqualification in the Court file which indicates the disqualification is due to the "[f]ather of the victim was physician to Judge's mother-in-law with family association." (Exhibit E, Order of Disqualification). It is important to note that the order signed by Judge Lambros includes Judge Lambros' name as the one being disqualified. *Id.* Calvey, however, believes that [it] should have been *Judge Ulrich's name*, not Judge Lambros' as the one being disqualified. Calvey's belief is supported by the SCAO Assignment forms, which indicate the initial arraignment–in front of Judge Ulright–was adjourned on June 27, 2000 and

rescheduled for July 6, 2000–in front of Judge Pavlich; the reason listed for this being "new judge assigned." (Exhibit D, SCAO Assignment Forms).

The precise connection between Judge Ulrich and the Tetzlaff family is unclear. Judge Ulrich's office was contacted to try to arrange a phone conversation in hopes of conclusively resolving the issue. (Exhibit F, Letter to Judge Ulrich). Judge Ulrich's office indicated its initial willingness to cooperate provided someone, perhaps from the State Attorney General's Office, would be included in the conversation. Soon thereafter, however, when contacted about scheduling the conference call, Judge Ulrich–through Deputy Court Administrator for the 50th Circuit Court Marcy Smith–declined to cooperate. (Exhibit C, Scott Grabel affidavit).

(*See* Def. Appellant's Br. On Appeal 11-12,PageID.1211-1212) (emphasis in original). The

Michigan Court of Appeals denied this claim for lack of merit. The Court agrees this claim lacks

merit. While Petitioner might disagree with the methods used and decisions made by his appellate

counsel when he investigated the issue of judicial bias, he has not shown that his counsel failed to

provide a reasonable investigation into the issue. *See Strickland*, 466 U.S at 691.

Even if Petitioner could somehow show deficient performance, he could not

demonstrate prejudice. Petitioner's appellate brief makes plain that counsel investigated the issue

of judicial bias through the use of court documents as well as the statements of Petitioner and his

trial court counsel. Petitioner's appellate counsel also attempted to set up a conference call with the

presiding judge. There is little that the statements contained in the affidavit would have added to the

investigation. Furthermore, the Court has found the underlying claim of judicial bias is meritless.

As such, Petitioner suffered no prejudice stemming from his appellate counsel's decision not to

contact Petitioner's previous attorney.

*B.      Failure to Raise Additional Grounds*

Next, Petitioner contends his appellate counsel rendered deficient performance by failing to raise several additional grounds that were raised in Petitioner's habeas petition.  An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).  To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decision."  *Stickland*, 466 U.S. at 688.

As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another.  *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Petitioner cannot make that showing here because, as set forth in detail above, the arguments his appellate counsel failed to raise lack merit.  Where a claim lacks merit, appellate counsel is not ineffective in declining to raise the issue on direct appeal.  *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. Feb. 26, 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."); *Burton v. Renico*, 391 F.3d 764, 781-82 (6th Cir. 2004) (stating that where a claim of prosecutorial

misconduct lacks merit, the petitioner's counsel was not ineffective for declining to raise the issue on appeal).

Petitioner therefore is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

### **Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. See *Slack v. McDaniel*, 529 U.S. 473 (2000).

Dated:  April 25, 2017                      /s/ Ray Kent
                                            RAY KENT
                                            United States Magistrate Judge

### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(c); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).